**Hildred HUNDLEY, Appellant,**

v.

**Thomas GOSSETT et al., Appellees.**

Court of Appeals of Kentucky.

March 4, 1955.

Motion for Modification Denied

May 13, 1955.

66

Russell O'Neill, Central City, for appellant.

Sam T. Jarvis, Greenville, for appellees.

CAMMACK, Justice.

This is a false arrest and imprisonment case. Hildred Hundley filed a complaint against Thomas Gossett, Homer Dukes, James Dukes, Arthur Bobbitt, the National Surety Company of New York and the Ohio Casualty Company, alleging false arrest and imprisonment and malicious prosecution. He sought to recover $25,000 for the false arrest and imprisonment and $10,000 for the malicious prosecution. Gossett and Homer and James Dukes were police officers

in Central City, and the National Surety Company was the surety on their official bonds. Arthur Bobbitt was a deputy sheriff of Muhlenberg County, and the Ohio Casualty Company was the surety on his bond. On motion of the appellees, Hundley was required to elect as to which of the claims he would prosecute. He elected to prosecute the one for false arrest and imprisonment. Before the case went to trial the court dismissed the complaint as to the surety companies. At the conclusion of Hundley's evidence a peremptory instruction was given in favor of James Dukes. At the conclusion of all the evidence the court gave a peremptory instruction in favor of the other appellees.

The first question which confronts us is, whether it was error for the court to direct a verdict in favor of the appellees. It is necessary, therefore, to review the evidence.

Hundley, 36 years of age, was employed in Central City as a motion picture operator. He testified that he finished his work about 11 o'clock the night of August 3, 1952, and walked to his home which was only about a block from the theater where he was employed. He said he went to bed about 11:30 and was awakened by an explosion between 3:30 and 4:30 the next morning. He dressed and drove down to a restaurant at the railyard office where a crowd of people had gathered to see what had caused the explosion. He then drove to the taxi station and while he was there some one said he thought the explosion was in North Central City, so Hundley drove to the race track and stables along with the city policemen and other persons. He said they stayed there three or four minutes and that he then drove home and went to bed without learning the cause of the blast.

Hundley testified also that about 6:15 or 6:20 the same morning the appellees came to his house and placed him under arrest. He said that when he opened the door Gossett told him he was under arrest and that he asked what for and Bobbitt said, "Damn you, you know what for." According to him, the officers did not have

a warrant. The officers took him to the city jail where he was kept between two and two and one-half hours, when he was released on a $1,000 bond. He said that about an hour and a half after he was placed in jail Chick Donovan was arrested and put in jail. The explosion was caused by the dynamiting of a garage belonging to Dave Cohen. Hundley and Donovan were arrested for the offense. At Hundley's examining trial on August 8th, the charge against him was dismissed for lack of evidence.

Chick Donovan testified that he was awakened by the explosion and got up to investigate it. He saw Hundley at the cab station and he was with the group seeking the cause of the explosion. He was arrested by the appellees about 7:30 the morning of August 4, 1953, and taken to jail. When he asked the officers if they had a warrant, they exhibited one sworn to by Gossett which directed his and Hundley's arrest.

Earl N. Meredith said he was awakened by the explosion and he got up and drove to the cab station around 4:00 a. m. While he was there Hundley drove up in his car. Paul Hickman, an employee of the railroad, was at work when the explosion took place. He saw Hundley in the restaurant at Eighth Street between 30 and 45 minutes after the explosion. He said Hundley came in and asked him what had blown up. A number of people testified that they had known Hundley for many years and were familiar with his reputation in the community where he lived and that it was good.

At the time of the explosion Cyril E. Shadowen, an attorney, was serving as County Judge of Muhlenberg County by appointment. He said he went to Cohen's home, where he saw the appellees and talked with them. During their conversation concerning likely suspects the names of Hundley and Donovan were discussed. There had been some disturbances in the community involving acts of violence in a movement to unionize the workers in Central City and he said the police officers were under the impression that these two in-

dividuals were the "ring leaders" in the movement. Also, Hundley was suspected because some one had observed a light-colored car leave the vicinity of Cohen's house before the explosion. Hundley had a tan 1939 Ford. In addition, it had rained that night and there was a mud hole near Cohen's house and the right wheels of Hundley's car had mud on them. Shadowen stated further that about 7:00 or 7:30 that morning the officers came to his house and, as the result of the statements made to him, he issued a warrant for the arrest of Hundley and Donovan. According to him, the officers were at his house 10 or 15 minutes.

The appellees denied Hundley's statement that one of them said, "Damn you, you know what for," in answer to his question concerning the reason for his arrest. They said he asked for a warrant and they showed it to him. They testified that Hundley was arrested around 7:15 or 7:20. The jailer testified that Hundley was brought to the jail about 7:30 and that Donovan was brought in around 8:30 or 9:00 a. m. The officers testified that Donovan was arrested about 10 or 15 minutes after Hundley was put in jail.

We think a jury issue was created as to whether the officers had a warrant at the time Hundley was arrested. He said he was arrested about 6:15 or 6:20, while the officers said it was around 7:15 or 7:20. If he had been arrested at 6:15, the officers could not have been in possession of a warrant because the county judge said it was issued about 7:30. There is also some dispute as to the amount of time that had elapsed between the time Hundley was put in jail and the time Donovan was arrested on the warrant. In false imprisonment cases, like other cases involving conflicting evidence, the jury is entitled to accept either version of the incident and it is error to direct a verdict in such instances. Couch v. Vanhoose, 314 Ky. 36, 234 S.W.2d 169; National Bond and Investment Company v. Whithorn, 276 Ky. 204, 123 S.W.2d 263.

We are also unable to conclude as a matter of law that the officers would have been justified in arresting Hundley without a warrant. The only evidence pointing to Hundley as the perpetrator of the crime was that he had a light-colored car with mud on the right tires; coupled with the officer's testimony that some one had observed a light-colored car leave the alley near the scene of the explosion and that there was a mud hole in the alley. Where the facts are such that a reasonably prudent man would be justified in believing a person guilty of committing a felony, an officer is authorized to make an arrest without a warrant. However, whether reasonable grounds actually existed is often said to be a question for the jury. Commonwealth v. Bollinger, 198 Ky. 646, 249 S.W. 786; Grau v. Forge, 183 Ky. 521, 209 S.W. 369, 3 A.L.R. 642. We are of the opinion that the case before us presented a question for the jury on that issue.

Finally, Hundley argues that pursuant to CR 18.01 he could join in his complaint as many claims as he had against the officers and that it was error for the court to require him to elect. CR 18.01 provides:

"The plaintiff in his complaint * * * may join either as independent or as alternative claims as many claims either legal or equitable or both as he may have against an opposing party. * * *"

This language permits the joinder of any and all claims a party may have against the opposing party. Where the claims are against the same defendants, there can be no misjoinder in a civil action. See Clay, CR, pp. 217, 220; Atlantic Lumber Corporation v. Southern Pac. Co., D.C.Or.1941, 2 F.D.R. 313. Consequently, the court erred in requiring Hundley to elect as to which claim he would prosecute.

In view of what has been said, we think Hundley was entitled to be heard on his complaint against all of the named defendants.

Judgment reversed for proceedings consistent with this opinion.